```
         UNITED STATES DISTRICT COURT FOR THE
            MIDDLE DISTRICT OF PENNSYLVANIA
```

MARCOS TADEO GALAN-PAREDES,        :
                                   :
                                   :
            Petitioner             :    CIVIL NO. 1:CV-06-1730
                                   :
        vs.                        :    (Judge Caldwell)
                                   :
WARDEN KAREN F. HOGSTEN,           :
                                   :
            Respondent.

*M E M O R A N D U M*

I.    *Introduction*.

On September 5, 2006, Petitioner, Marcos Tadeo Galan-Paredes, incarcerated at FCI-Allenwood, White Deer, Pennsylvania, filed a pro se petition under 28 U.S.C. § 2241 for a writ of habeas corpus, challenging the calculation of his sentence by the Federal Bureau of Prisons (the BOP). He alleges the BOP has erroneously refused to give him credit for time he spent in custody from June 10, 2001, the date of his arrest after a traffic stop, through October 25, 2001, the date of his federal indictment, a period of about four and one-half months.

No issue of exhaustion is presented, and we have authority to review the BOP's sentencing calculation by way of section 2241. *See Coady v. Vaughn*, 251 F.3d 480, 485-86 (3d Cir. 2001); *United States v. Smith*, 101 F. Supp. 2d 332, 338 (W.D. Pa.

2000). The issue presented is whether the contested period was time spent under 18 U.S.C. § 3585(b)(1) in "official detention" on the federal conviction or time spent in "civil detention" (as Respondent here phrases it) awaiting the outcome of immigration proceedings. If the former, credit must be awarded; if the latter, then not.

II.     *Background*.

On June 10, 2001, police in the City of Virginia Beach, Virginia, stopped Galan-Paredes for reckless driving. He was arrested and held in custody. He was also issued a traffic citation for reckless driving not involving an accident. (Doc. 2, traffic citation attached as an exhibit). The citation ordered him to appear in traffic court on July 6, 2001.[1]

---

[1] Respondent asserts Galen-Paredes was arrested as a result of the traffic citation. (Doc. 10, Resp't's Ex. 1, ¶ 6 (penalty-of perjury declaration of Karen Gemberling, assistant inmate systems manager at FCI-Allenwood). Petitioner asserts, however, that he was taken into custody, at least initially, as the result of a detainer issued to resolve his immigration status. (Doc. 2, pp. 2-3). There is no need for us to resolve this factual dispute because, as will be seen below, Petitioner is only entitled to credit on his federal sentence for time served in "official detention" on the federal conviction. Time spent in custody for the traffic citation or to resolve his immigration status would not qualify as official detention.

We note, however, there is some support for Petitioner's contention. In Petitioner's direct appeal of his conviction, the Fourth Circuit stated that Galan-Paredes had been arrested as a

(continued...)

On July 6, 2001, Petitioner was sentenced on the traffic violation to a thirty-day loss of his driver's license, a fine of $130, and costs in the amount of $30.  (Doc. 10, Resp't's Ex. 1, ¶ 6, Gemberling's penalty-of perjury declaration).  After receiving the sentence for reckless driving, Respondent asserts Galan-Paredes "remained detained at the Virginia Beach County Jail in civil detention status" for the Bureau of Immigration and Customs Enforcement (ICE), the administrative successor to the INS.  (*Id.*, ¶ 7).

Respondent also asserts that "[o]n August 28, 2001, Galan-Paredes' detention continued at the Virginia Beach County Jail as he was detained in an Administrative Felony Deportation Proceedings status and charged with Removal Proceedings."  (*Id.*, ¶ 8).  The government's brief on Petitioner's direct appeal of his criminal conviction indicates that August 28, 2001, was also

---

[1](...continued)
previously deported alien.  *United States v. Galan-Paredes*, 47 Fed. Appx. 671, 671 (4th Cir. 2002) (nonprecedential)(per curiam)("Virginia Beach police stopped him after he committed a traffic violation.  A routine record check revealed that Galan Paredes was a deported alien, and he was arrested.").  In the government's brief on that direct appeal, the government also stated that Galan-Paredes had been taken into custody, not because of the traffic violation, but because of his immigration status. *See United States v. Galan-Paredes*, *supra*, Brief of Appellee, 2002 WL 32726060, at *3 (The Police Department contacted the United States Immigration and Naturalization Service ("I.N.S.") and it was determined that a person named Marcus Tadeo Galan-Paredes had been previously deported.  Galan was taken into I.N.S. custody . . . .").

the date Petitioner was interviewed by INS agent Ambrosone.  In that brief, the government wrote:

> [O]n August 28, 2001, I.N.S. Special Agent Nicholas Ambrosone (hereinafter "Ambrosone") made contact with Galan. Galan admitted to Ambrosone that he was a native and citizen of Columbia, that he had been previously deported and that he had not obtained permission before re-entering the United States. (Presentence Report p. 3).

*United States v. Galan-Paredes*, *supra*, Brief of the Appellee, 2002 WL 32726060, at *3.

On October 25, 2001, Galan-Paredes was indicted in the United States District Court for the Eastern District of Virginia with illegal reentry by a deported alien, (*id.*, ¶ 9), a violation of 8 U.S.C. § 1326(a) and (b)(2).  After a plea of guilty, he was sentenced on April 11, 2002, to 70 months' imprisonment.  (*Id.*). His presumptive parole date is February 15, 2007, according to the BOP's website, www.bop.gov.

The BOP credited his sentence for the period of October 25, 2001, the date of his federal indictment, through April 10, 2002, the day before he was sentenced.  (*Id.*, ¶ 10). The BOP has refused to credit his sentence for the time from June 10, 2001, the date of his arrest after the traffic stop, through October 24, 2001, the day before he was indicted, on the basis that he was being held during that time by ICE in civil detention

-4-

pending a final determination of deportability and was not in "official detention" on his federal conviction within the meaning of 18 U.S.C. § 3585(b)(1).

III.  *Discussion.*

In part, Galan-Paredes contends that he is entitled to credit for the period in question simply because his custody ultimately led to the criminal charge of violating immigration law.  It is immaterial that he might have been initially held in ICE custody during this time for immigration purposes only. Because the detention led to the conviction, the detention should be considered time spent in official detention on his federal conviction for which he should receive credit under 18 U.S.C. § 3585(b)(1).[2]  Petitioner adds that it is unrealistic to believe that once he reentered the country, his detention would simply be an administrative one to determine the outcome civilly under the immigration laws.  It was inevitable he would be charged once his immigration history was made clear.

---

[2]  In relevant part, section 3585(b) provides:

**(b) Credit for prior custody.** – A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences–

(1) as a result of the offense for which the sentence was imposed; . . . .

In opposition, Respondent argues that Galan-Paredes is not entitled to credit because under Program Statement 5880.28, Sentence Computation Manual, "official detention" under section 3585(b) does not include time spent in ICE "civil custody" pending a final determination of deportability.[3] Respondent asserts that during the time in question Galan-Paredes was in custody pending civil deportation proceedings. (Doc. 10, Resp't's Ex. 1, ¶ 11, Gemberling's penalty-of perjury declaration). Hence, he is not entitled to credit on his sentence for that period.

We have been unable to locate much authority on this issue.[4] It seems that only four district courts have addressed

---

[3] The relevant portion of the Program Statement reads as follows:

> Official detention does not include time spent in the custody of the U.S. Immigration & Naturalization Service (INS) under the provisions of 8 U.S.C. § 1252 pending a final determination of deportability. An inmate being held by <u>INS pending a civil deportation determination is not being held in "official detention" pending criminal charges</u>.

(Doc. 10, Attach. 2, Program Statement 5880.28 at p. 14. (emphasis in original).

[4] The Program Statement cites several cases: *Ramirez-Osorio v. INS*, 745 F.2d 937 (5th Cir. 1984); *Shoaee v. INS*, 704 F.2d 1079 (9th Cir. 1983); and *Cabral-Avila v. INS*, 589 F.2d 957 (9th Cir. 1978), but none of them deal with the issue at hand; essentially, they are relevant only for the proposition that ICE proceedings are civil in nature.

it: *Ghadiri v. Sniezek*, 2006 WL 3023034 (N.D. Ohio); *Alba-Tovar v. United States*, 2006 WL 2792677 (D. Or.); *Guante v. Pugh*, 2005 WL 3867597 (S.D. Ga.)(Nangle, J.); and *Fletcher v. Pugh*, 2004 U.S. Dist. Lexis 29450 and 29451 (S.D. Ga.)(Bowen, J.).  All four agree that in light of the Program Statement and the case law, time spent in ICE custody awaiting the outcome of removal proceedings is not time in official detention that must be credited under section 3585(b)(1) to a federal sentence imposed on a conviction that occurs subsequent to a petitioner's civil detention or custody by ICE.  As further support, three of the cases cite *Reno v. Koray*, 515 U.S. 50, 60-61, 115 S.Ct. 2021, 2026-27, 132 L.Ed.2d 46, 56-57 (1995), where the Supreme Court stated that BOP Program Statements are entitled to "some deference."  *See Alba-Tovar*, *supra*, 2006 WL 2792677 at *2 n.2; *Guante, supra,* 2005 WL 3867597 at *2 n.2; *Fletcher, supra,* 2004 U.S. Dist. Lexis 29450 at *5 n.5.

We agree with this statement of the law.  However, as *Guante* illustrates, not all of the time spent in ICE custody is necessarily spent "pending a final determination of deportability."  Instead, it might be time spent that should be credited to the federal sentence, and we are not sure on the record before us that we can conclude that all the time at issue here was spent in ICE civil detention.

*Guante* presents a fact pattern similar to the instant case. In *Guante*, the petitioner was arrested on state drug charges on May 16, 2000. He finished serving a six-month state sentence on February 6, 2001, and ICE then took custody, scheduling his removal for March 8, 2001. However, in the meantime, ICE discovered the petitioner had previously been removed based on a conviction for an aggravated felony. On March 8, 2001, the petitioner admitted in an interview with ICE agents that this was true. ICE cancelled the removal and held the petitioner pending prosecution for illegal reentry. 2005 WL 3867597 at *1.

On April 24, 2001, the petitioner was indicted. He pled guilty and was sentenced to seventy months in prison. The BOP gave the petitioner credit from the date of the indictment to May 4, 2001.[5] The petitioner claimed that he was entitled to credit for time in custody after his state sentence ended on February 6, 2001, to the date of his indictment, April 24, 2001. Alternatively, he claimed he was entitled to credit between the date he was to be removed, March 8, 2001, and the date of his indictment.

In light of Program Statement 5880.28, case law stating that removal proceedings are civil in nature, and *Reno*,

---

[5] The significance of May 4 is not apparent.

-8-

*supra*, the court rejected the claim that the petitioner was entitled to credit beginning on February 6, 2001, because this time was spent in ICE civil detention.  However, the court ruled that the petitioner was entitled to credit for the time between March 8, 2001, the date of his ICE interview, and April 24, 2001, the date of his indictment, because the government conceded that after March 8, the day it was confirmed that the petitioner had been previously deported, he was being held for criminal prosecution for illegal entry.  2005 WL 3867597 at *3.  It followed that Program Statement 5880.28 did not apply since from that point on the petitioner was no longer being held for civil removal proceedings.  The court then reasoned that credit should have been awarded for the time between March 8, 2001, and April 24, 2001, stating that "the petitioner should not be penalized for the government's decision not to bring him before a magistrate judge for initial appearance when his detention was pending criminal prosecution."  2005 WL 3867597 at *3.

Similarly, in the instant case, Galan-Paredes was initially held for immigration proceedings, but he might have submitted to an ICE interview on August 28, 2001, in which he admitted to illegal reentry (if the government's brief on his direct appeal of his criminal conviction is correct), thereby resulting in the indictment of October 25, 2001.  If so, it

appears that, just as in *Guante*, the government shifted from holding Petitioner for removal proceedings to holding him for criminal proceedings.

We recognize certain factual distinctions between *Guante* and the instant case.  In *Guante*, the petitioner had been scheduled for removal, and the removal was cancelled so that he could be prosecuted.  In the instant case, no decision on removal had been made by August 28, 2001, and Respondent supplies evidence that on that date Petitioner was detained in "Administrative Felony Deportation Proceedings" and "charged with Removal Proceedings."  Nonetheless, the petitioner in *Guante* was probably also kept administratively on track for removal while deportation was halted so that he could be prosecuted (and perhaps incarcerated) for illegal reentry.  Thus, the relevant fact is whether ICE decided to put off removal proceedings in preference to criminal prosecution.  If ICE decided to do so, we follow *Guante*'s reasoning to conclude that Petitioner should receive credit for the time between the date that decision was made (probably August 28) and the date of the indictment.  This could be a period of about sixty-nine days, if it turns out to be from August 28, 2001, to October 25, 2001.

We will thus require additional evidence from Respondent concerning whether ICE made a decision that Galan-

Paredes' case was appropriate for criminal prosecution and if so, when. We leave it up to Respondent and ICE to provide the necessary evidence. If in documentary form, the relevant portion of the ICE file should be submitted. Alternatively, affidavits or penalty-of perjury declarations may be used. If available, a declaration from INS agent Ambrosone should affirm whether or not the agent decided that criminal prosecution was appropriate. Respondent should also submit any ICE form that was filed on or after August 28, 2001, relating to Galan-Paredes's detention "in an Administrative Felony Deportation Proceedings status and charged with Removal Proceedings."

        We will issue an appropriate order.

                      /s/William W. Caldwell
                      William W. Caldwell
                      United States District Judge

Date: January 3, 2007

```
              UNITED STATES DISTRICT COURT FOR THE
                 MIDDLE DISTRICT OF PENNSYLVANIA
```

MARCOS TADEO GALAN-PAREDES,  :
                             :
        Petitioner           :
                             :   CIVIL NO. 1:CV-06-1730
        vs.                  :
                             :   (Judge Caldwell)
WARDEN KAREN F. HOGSTEN,     :
                             :
        Respondent.          :

*O R D E R*

AND NOW, this 3rd day of January, 2007, it is ordered that:

   1. Respondent shall file evidence concerning whether ICE made a decision that Galan-Paredes' case was appropriate for criminal prosecution and if so, when that decision was made.

   2. If available, a declaration from INS agent Ambrosone should affirm whether or not the agent decided that criminal prosecution was appropriate.

   3. Respondent should also submit any ICE form that was filed on or after August 28, 2001, relating to Galan-Paredes's detention "in an Administrative Felony Deportation Proceedings status and charged with Removal Proceedings."

   4. Respondent shall comply with this order within fifteen days of its date.

                              /s/William W. Caldwell
                              William W. Caldwell
                              United States District Judge